UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUNDANCE GOLD CORPORATION,

       Plaintiff,

v.                                                   Case No. 8:08-cv-1937-T-24 TGW

HOMETOWN HIGHLANDS FLORIDA,
LLC,

       Defendant.
_____/

**ORDER**

This cause comes before the Court on Defendant's Motion to Dismiss. (Doc. No. 6). Plaintiff opposes the motion. (Doc. No. 7).

**I. Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)(citation omitted). As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965 (citation omitted). While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right

to relief above the speculative level." Id. (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## II. Background

Plaintiff Sundance Golf Corporation ("Sundance") alleges the following in its amended complaint (Doc. No. 5): Sundance and Hometown Highlands Florida, LLC ("Hometown") both own adjoining parcels of real estate in Pasco County. Sundance owns what is known as Parcel A and operates a golf course on the property. Hometown owns Parcel B and has a housing community on the property. Both parcels were formerly owned by Douglas Family Partnership ("Douglas").

Sundance and Hometown came to own their parcels through the following transactions: In 1993, Douglas sold Parcel A to Rinaldo, and in 1995, Rinaldo sold Parcel A to an entity that later merged with Sundance. In April 1998, Douglas, Rinaldo, and Sundance entered into an Agreement for Assignment of Residential Development Rights (the "Assignment"). In paragraph 1 of the Assignment, the parties agreed to the following:

> Rinaldo and Sundance hereby assign to Douglas and its successors and assigns all of the residential development rights which pertain to the golf course property described in attached Exhibit "B". These rights shall be used on the immediately adjacent property being sold as described in attached Exhibit "A". The two legal descriptions as described in Exhibits "A" and "B" together contain the "parent parcel" . . ..

(Doc. No. 5, Ex. C). The Assignment did not define the phrase "residential development rights." At the time of the Assignment, Parcel B was owned by Douglas.

2

In May 1998, Douglas sold Parcel B to Heiler, and in 2006, Heiler sold Parcel B to Hometown. In 2006, Sundance, Rinaldo, and Hometown entered into a Reciprocal Easement Agreement ("REA"). In section 9.10 of the REA, the parties agreed to terminate the Assignment, except that the parties agreed that paragraph 1 of the Assignment was not terminated or otherwise limited by the REA. (Doc. No. 5-5).

On September 26, 2008, Sundance filed the instant lawsuit in which it seeks a declaration from the Court regarding the definition of the phrase "residential development rights" contained in Paragraph 1 of the Assignment. Specifically, in Count I, Sundance seeks a declaration that such phrase did not include density and intensity rights[1], and therefore, such rights remain with Parcel A. Additionally, in Count II, Sundance seeks a declaration that interpreting the phrase to include density and intensity rights (and thus finding that the Assignment did transfer density and intensity rights to Parcel B) would violate the Equal Protection and Due Process clauses of the Florida and United States Constitution.

## III. Motion to Dismiss

In response to the amended complaint, Hometown filed the instant motion to dismiss, in which it argues that both claims must be dismissed. Accordingly, the Court will analyze each claim.

### A. Count I

In Count I, Sundance seeks a declaration that the phrase "residential development rights"

---

[1] According to Section 201 of Pasco County's Land Development Code (which can be found at http://www.municode.com/resources/gateway.asp?pid=10281&sid=9), density refers to the number of dwelling units divided by the number of acres on the site. Intensity refers to the degree to which a parcel of land is developed.

did not include density and intensity rights, and therefore, such rights remain with Parcel A. Hometown moves to dismiss this claim, arguing that density is a residential development right and that an interpretation of the Assignment that does not include density as a residential development right would render paragraph 1 of the Assignment meaningless.

Sundance responds that the phrase "residential development rights" does not include density and intensity rights, because such rights were not transferable to Parcel B when the Assignment was made, nor are they transferable to Parcel B now, under Pasco County's Land Development Code (the "Code"). Specifically, Sundance points to Section 319.5 of the Code, which provides in pertinent part:

> The gross density and intensity of development of a development site and any portion of which is within a transportation corridor[2] shall be the gross density permitted . . .. However, such density and intensity may be transferred from the portion of the development site or expanded development site within a transportation corridor to portions of the development site or expanded development site that are located outside of the transportation corridor, . . . through . . . density transfer . . .[.] [D]ensity transfers may result in a greater net density on the portion of the development site or expanded development site that is not located within the transportation corridor than would be permitted by the underlying zoning district . . ..

Section 319.5A of the Code. Additionally, Sundance points to Section 201 of the Code, which defines a density credit as "[t]he transfer of development rights from one portion of a parcel which, for environmental or other reasons is not developable, to another portion of the same parcel." Therefore, Sundance argues, density and intensity rights could not be transferred to

---

[2]Section 201 of the Code defines transportation corridors as follows: All land occupied or used or intended to be occupied or used as a street or roadway and shown on the county comprehensive plan, transportation element, transportation corridor preservation map and table, as amended, which may include areas for medians, shoulders, frontage roads, drainage, buffers, landscaping, sidewalks, bike paths, utilities, and other roadway-related improvements.

Parcel B, because the Code only refers to transfers to another portion of the *same* parcel.

At this stage in the litigation, the Court is unable to declare whether density and intensity rights were transferred to Parcel B. The parties are asking the Court to determine the meaning of an undefined phrase in the Assignment, which may be susceptible to more than one reasonable interpretation.

It appears that the ability to transfer development rights, at least with regards to density, does not exist without the county making such a provision in its land development regulations. Fla. Stat. §163.3202(3); see also Advantage West Palm Beach, Inc. v. West Coast Beach Community Redevelopment Agency, Inc., 728 So. 2d 755, 755-56 (Fla. 4th DCA 1998). Based on the Code sections cited by the parties, it does not appear that Pasco County has granted the blanket ability to transfer density rights.[3] However, the Court is unfamiliar with Pasco County's Land Development Code and the nuances of land development regulations, and as such, this issue should be more fully briefed by the parties.

Assuming that Pasco County only allows the transfer of density rights in certain situations, such as when the rights are being transferred to another portion of the same parcel, one reasonable interpretation of the undefined phrase "residential development rights" contained in the Assignment could be development rights that are actually able to be transferred to, and utilized by, another parcel. Such an interpretation is consistent with the rest of the paragraph that requires that the transferred residential development rights be utilized on Parcel B. Furthermore, given that the phrase is undefined in the Assignment, it makes sense to take into

---

[3]The parties have not addressed whether the current version of Sections 201 and 319.5 of the Code are the same today as they were when the Assignment and REA were entered into.

consideration what actually could be transferred when attempting the determine what the parties meant by the phrase.

Conversely, one of the stated purposes of the Assignment is to allow a mobile home community to be built on Parcel B, which the parties to the Assignment state is in their best interest. (Doc. No. 5, Ex. C, page 3). Given that the Court is unfamiliar with land development law, it is unclear to the Court what other types of residential development rights the parties could have been referring too. Sundance's argument that the parties were referring to the right of ingress and egress on Parcel A to benefit Parcel B is undermined by the fact that the Assignment states that the transferred rights "shall be used on" Parcel B. Again, the parties need to more fully brief the Court on the issues in this case.[4] Accordingly, the Court denies the motion to dismiss as it relates to Count I.

### B. Count II

In Count II, Sundance seeks a declaration that interpreting the phrase "residential development rights" to include density and intensity rights (and thus finding that the Assignment did transfer density and intensity rights to Parcel B) would violate the Equal Protection and Due Process clauses of the Florida and United States Constitution. Hometown argues that this claim must be dismissed because such constitutional violations only reach government, rather than private, action.

In response, Sundance points to the following allegations in its amended complaint, which it contends makes the decision to transfer the "residential development rights" attributable

---

[4]Given the sparse law on transferable density rights, the parties should brief the issue of whether one can assign their right to something to a party that is not permitted to exercise such right.

to Pasco County:

> The conduct of Hometown, whereby it claims the Assignment and the REA transferred density, and in its reliance upon and use of the Assignment and REA to allegedly transfer density, is fairly attributable to Pasco County and hence the State. Upon information and belief, prior to the sale of Parcel A to Sundance, by a letter dated in 1992, Pasco County informed and advised counsel for Douglas, the former owner of Parcel B, that Parcel A "could not be developed with residential units as these units [had] been assigned to [Parcel B]". Pasco County further made similar statements and/or determinations therein regarding whether "residential development rights" were assignable. These statements and/or determinations were made despite the fact that no alleged assignment instrument existed at that time and despite the fact that such an assignment would violate the Pasco County Land Development Code. The decision of Douglas to thereafter attempt a transfer of "residential development rights" by the Assignment in 1998, after Douglas sold Parcel A to Sundance was based upon, and attributable to, the foregoing representations and conduct of Pasco County. Thereafter, Pasco County made similar representations to Heiler Properties, Inc. and Hometown.

(Doc. No. 5, ¶ 53). Additionally, Sundance alleges that Pasco County willfully participated in, was a joint participant in, and encouraged Douglas, Heiler Properties, Inc. and Hometown's decision to make use of the Assignment and REA to complete a transfer of "residential development rights" and/or "residential units," because Heiler Properties, Inc. and Hometown were led to believe that the maximum density on both Parcel A and Parcel B could, as a result thereof, be used exclusively on Parcel B. (Doc. No. 5, ¶ 54-56).

Despite Sundance's conclusory allegations that Pasco County "encouraged," "willfully participated in," and "was a joint participant in" the decision to use the Assignment and REA as a means of transferring density rights, it has not sufficiently alleged conduct that is fairly attributable to Pasco County. Pasco County's alleged encouragement and willful joint participation is based on: (1) the allegation that in 1992, Pasco County advised Douglas that Parcel A could not be developed with residential units because such units had been assigned to Parcel B; and (2) the allegation that Pasco County led Heiler and Hometown to believe that the

7

maximum density on both Parcel A and B could be used exclusively on Parcel B .[5] These allegations fall short of what is required to adequately allege government action.

There are three tests used to determine whether the actions of a private entity are properly attributable to the government: (1) the public function test, (2) the state compulsion test, and (3) the nexus/joint action test. See Focus on the Family v. Pinellas Suncoast Transit Authority, 344 F.3d 1263, 1277 (11th Cir. 2003)(citations omitted). It appears that Sundance is relying on the state compulsion and nexus/joint action tests. However, Sundance's argument on this issue is without merit.

"The state compulsion test limits state action to instances where the government has coerced or at least significantly encouraged the action alleged to violate the Constitution." Id. at 1277. Under this test, the government is responsible for the action of a private party when the government compels the act. See Flagg Brothers, Inc,. v. Brooks, 436 U.S. 149, 164 (1978)(citation omitted). However, the government's mere acquiescence in a private action does not convert the action into that of the government. See id.

Sundance's allegations do not show that Pasco County compelled, ordered, required, significantly encouraged, or directed the execution of the Assignment and/or the REA. Instead, at best, the allegations show that Pasco County agreed that the density rights could be transferred

---

[5]Additionally, Sundance alleges that in 1992, Pasco County "made similar statements and/or determinations therein regarding whether 'residential development rights' were assignable." This vague allegation that Pasco County made unspecified statements cannot support Plaintiff's position, because there is no indication as to what these statements conveyed about the assignment of residential development rights. This vague allegation cannot support Sundance's argument that Pasco County "encouraged," "willfully participated in," and/or "was a joint participant in" the decision to use the Assignment and REA as a means of transferring density rights.

to Parcel B. Mere acquiescence in an act is not sufficient to deem that act to be an act of the government.

"The nexus/joint action test applies where the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." Focus on the Family, 344 F.3d at 1277 (internal quotation marks and citations omitted). This test "assure[s] that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). Thus, "[t]o charge a private party with [S]tate action under this standard, the governmental body and private party must be intertwined in a symbiotic relationship [and] . . . the symbiotic relationship must involve the specific conduct of which the plaintiff complains." Rayburn v. Hogue, 241 F.3d 1341, 1348 (11th Cir. 2001)(internal quotation marks and citations omitted).

Sundance's allegations in the complaint do not support the conclusory allegation of willful joint participation by Pasco County in the purported assignment of density rights via the Assignment and/or the REA. Furthermore, Sundance has not alleged a mutually dependent relationship between Pasco County and Hometown (or Douglas or Heiler)–it is unclear as to what Pasco County could gain from a transfer of density rights to Parcel B.

Accordingly, Sundance's allegations fall short of what is required to adequately allege government action. As such, Hometown's motion to dismiss Count II must be granted.

**IV. Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that Defendant's Motion to Dismiss (Doc. No. 6) is **GRANTED** as to Count II and **DENIED** as to Count I.

**DONE AND ORDERED** at Tampa, Florida, this 14th day of January, 2009.

SUSAN C. BUCKLEW
United States District Judge

Copies to:

Counsel of Record