UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUNDANCE GOLF CORPORATION,

       Plaintiff,

v.                                                                                              Case No. 8:08-cv-1937-T-24 TGW

HOMETOWN HIGHLANDS FLORIDA,
LLC,

       Defendant.
_____/

**ORDER**

This cause comes before the Court on the parties' cross-motions for summary judgment. (Doc. No. 31, 38). Each party has filed a response in opposition. (Doc. No. 42, 44). However, as explained below, the Court will not reach the merits of this case, as Defendant has correctly pointed out that this case must be dismissed for failure to join an indispensible party under Federal Rule of Civil Procedure 19.

**I.  Joinder Under Rule 19**

Rule 19(a) sets forth the rule regarding when a person must be joined as a party. One of the circumstances that requires joinder, if feasible, is when the court cannot accord complete relief among the existing parties in the person's absence. Fed. R. Civ. P. 19(a)(1)(A). However, if a person who would be required to be joined pursuant to Rule 19(a) cannot be joined because joinder is not feasible, Rule 19(b) provides the standard to be applied for determining whether the case should be dismissed:

> [T]he court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

  (1)  the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

  (2)  the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;

  (3)  whether a judgment rendered in the person's absence would be adequate; and

  (4)  whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). When making this determination, the court may consider materials submitted outside of the pleadings. See Ross v. Hairteck, Inc., 2006 WL 2366389, at *1 (M.D. Fla. Aug. 15, 2006); Ramsey v. Great Plains Cattle Feeders I, Ltd., 2008 WL 3914923, at *1 (N.D. Tx. Aug. 26, 2008).

## II. Background

  Plaintiff Sundance Golf Corporation ("Sundance") and Defendant Hometown Highlands Florida, LLC ("Hometown") both own adjoining parcels of real estate in Pasco County. Sundance owns what is known as Parcel A and operates a golf course on the property. Hometown owns Parcel B and has a mobile home community on the property. Prior to 1993, both parcels were owned by Douglas Family Partnership ("Douglas").

  In 1991, while Douglas owned both parcels, Pasco County ("the County") issued an inter-office memorandum that stated that the Planning and Zoning Department had determined that Parcels A and B would be considered as one parent parcel when determining the maximum density[1] under the County's Comprehensive Plan. (Doc. No. 38, Ex. B). Thereafter, on August

---

[1] According to Section 201 of Pasco County's Land Development Code (which can be found at http://www.municode.com/resources/gateway.asp?pid=14292&sid=9), density refers to the number of dwelling units divided by the number of acres on the site.

14, 1992, the County wrote a letter to Douglas in response to a phone conversation, in which Douglas requested clarification regarding the 1991 inter-office memo. (Doc. No. 38, Ex. C). In this letter, the County stated the following:

> [Y]ou have asked whether [Parcel A] . . . could be sold and still be considered with [Parcel B] . . . as one parent parcel in determining maximum density under the County's Comprehensive Plan.
>
> It is my determination that the golf course [Parcel A] could be sold as a golf course with no residential development rights. Said sale of the golf course would not restrict or reduce the maximum density allowed on the parent parcel. . . .
>
> If the golf course ceased operation, the golf course property [Parcel A] could not be developed with residential units as these units have been assigned to [Parcel B] . . . of the parent parcel. It would take a comprehensive plan amendment in order to develop the golf course property [Parcel A] with residential units. . . .

(Doc. No. 38, Ex. C).

Thereafter, Sundance and Hometown came to own their parcels through the following transactions: In 1993, Douglas sold Parcel A to Rinaldo, and in 1995, Rinaldo sold Parcel A to an entity that later merged with Sundance. In April 1998, Douglas, Rinaldo, and Sundance entered into an Agreement for Assignment of Residential Development Rights (the "Assignment"). In paragraph 1 of the Assignment, the parties agreed to the following:

> Rinaldo and Sundance hereby assign to Douglas and its successors and assigns all of the residential development rights which pertain to the golf course property described [as Parcel A] . . . . These rights shall be used on the immediately adjacent property being sold as described [as Parcel B] . . . . The two legal descriptions [of Parcels A and B] . . . together contain the "parent parcel" . . . .

(Doc. No. 5, Ex. C). The Assignment did not define the phrase "residential development rights." At the time of the Assignment, Parcel B was owned by Douglas.

In May of 1998, Douglas sold Parcel B to Heiler. On July 16, 1998, the County sent a letter to Heiler responding to Heiler's request for information regarding the density for Parcels A

3

and B. (Doc. No. 38, Ex. E). Specifically, the County stated that it estimated that a total of 797 residential units could be placed on Parcels A and B. (Doc. No. 38, Ex. E). The County further stated that the estimate was based on the best available data currently on file with the County and that the estimate could change if different data became available. (Doc. No. 38, Ex. E). In 2000, Heiler sought approval from the County to construct a 731 unit mobile home park on Parcel B, and the County gave Heiler site plan approval. (Doc. No. 38, Ex. F; Doc. No. 39, depo page 52; Doc. No. 40, p. 25; Doc. No. 38, Ex. G).

Between December of 2005 and January of 2006, Heiler began negotiating with Hometown to sell Parcel B to Hometown. (Doc. No. 34, ¶ 14). At the same time, Sundance received an offer from Pinnacle to buy Parcel A. (Doc. No. 34, ¶ 14). After Sundance received the offer, it contacted Heiler and offered to sell Parcel A to Heiler for the same price that Pinnacle offered to pay. (Doc. No. 38, Ex. M). Heiler, however, rejected Sundance's offer, stating that Sundance had transferred its density rights from Parcel A to Parcel B. (Doc. No. 34, ¶ 14). Sundance disputed this contention and informed both Heiler and Hometown that Sundance did not believe that it transferred its density rights from Parcel A to Parcel B. (Doc. No. 34, ¶ 15).

Thereafter, in September of 2006, Heiler sold Parcel B to Hometown. Around the same time, Sundance, Rinaldo, and Hometown entered into a Reciprocal Easement Agreement ("REA"). In section 9.10 of the REA, the parties agreed to terminate the Assignment, except that the parties agreed that paragraph 1 of the Assignment was not terminated or otherwise limited by the REA. (Doc. No. 5-5). Sundance contends that section 9.10 of the REA left paragraph 1 of the Assignment in place so that the parties could continue to dispute the meaning

4

and effect of paragraph 1 of the Assignment. (Doc. No. 34, ¶ 16).

On September 26, 2008, Sundance filed the instant lawsuit seeking declaratory relief.[2] Specifically, Sundance seeks the following declarations from the Court: (1) "that neither density rights nor intensity rights have been transferred from Parcel A owned by Sundance to Parcel B owned by Hometown;"[3] (2) "that the Assignment did not transfer either density or intensity rights from Parcel A owned by Sundance to Parcel B owned by Hometown;" and (3) "that the REA did not transfer either density or intensity rights from Parcel A owned by Sundance to Parcel B owned by Hometown, and did not otherwise preserve any prior alleged transfer thereof." (Doc. No. 5, p.5).

The lawsuit was filed in this Court based on diversity jurisdiction, because Sundance is a citizen of Florida, and Hometown is a citizen of Illinois. Furthermore, Sundance alleges that the value of the property rights at issue exceed $75,000.

## III.  Failure to Join Pasco County as a Party

In its motion for summary judgment and in response to Sundance's motion for summary judgment, Hometown argues that this case must be dismissed due to Sundance's failure to join the County. Hometown argues that the County is an indispensable party and that its joinder would destroy this Court's diversity jurisdiction over this case. This Court agrees.

---

[2] The First Amended Complaint originally contained two counts requesting declaratory relief. This Court dismissed Count II (in which Sundance sought a declaration that interpreting the phrase "residential development rights" in the Assignment and REA to include density and intensity rights would violate the Equal Protection and Due Process clauses of the Florida and United States Constitutions) for failure to state a claim. (Doc. No. 8).

[3] According to Section 201 of Pasco County's Land Development Code, intensity refers to the degree to which a parcel of land is developed.

Under Rule 19, the County is a necessary party if this Court cannot accord complete relief among the existing parties in the County's absence. Under the facts of this case, this Court finds that the County is a necessary party.

Sundance is requesting that this Court declare that neither density rights nor intensity rights have been transferred from Parcel A to Parcel B. Even if this Court granted the requested relief, such a declaration is meaningless if the County is not bound by the Court's determination. Based on the record before the Court, regardless of what the parties may argue that they intended via the Assignment and the REA, it appears that the County considers the density and/or intensity of Parcel A to be transferred to Parcel B, as evidenced by the fact that the County approved the site plan for 731 mobile home units on Parcel B. Thus, any determination by this Court regarding whether density and/or intensity was transferred from Parcel A to Parcel B via the Assignment and/or the REA would have no force, since the County is not a party in this case and not bound by this Court's determination. See, e.g., Acierno v. Preit-Rubin Inc., 199 F.R.D. 157 (D. Del. 2001)(finding the county to be a necessary and indispensable party in a dispute between a landowner and an entity that assisted in the development of property adjacent to the plaintiff-landowner's property that resulted from the county's decision to approve a development project on the adjacent property).

Sundance argues that the County is not a necessary party, stating:

> [This Court can enter a declaratory judgment] without affecting Pasco County because Pasco County may simply take no action. Hometown argues that "development of the golf course for residential purposes ultimately depends on Pasco County's approval," but Sundance has not sought any declaration from the Court as to whether Sundance may develop Parcel A in the future.

(Doc. No. 42, p. 18). Sundance's argument misses the point. Sundance requests that this Court

6

declare that neither density rights nor intensity rights have been transferred from Parcel A to Parcel B, but such a declaration is meaningless if the County is not bound by it.  For example, if this Court finds that neither density rights nor intensity rights have been transferred from Parcel A to Parcel B, at least one of three things will occur: (1) there will eventually be an attempt to develop Parcel A with residential units, but given that the County is not a party to this lawsuit, the County will not be bound by this Court's determination that Parcel A's density and intensity rights remained with Parcel A; (2) there will eventually be an attempt to block further development of Parcel B, but again, given that the County is not a party to this lawsuit, the County will not be bound by this Court's determination that Parcel A's density and intensity rights were not transferred to Parcel B; or (3) there is never an attempt to develop Parcel A with residential units or to block further development of Parcel B, which makes this Court's declaration regarding the transfer of density and intensity rights an unnecessary advisory opinion in a case that was never truly ripe for review.

Since this Court has found that the County is a necessary party that cannot be joined because its presence will destroy diversity jurisdiction, the next step under Rule 19 is to determine whether in equity and good conscience, the case should be dismissed.  In making this determination, this Court must consider four factors: (1) the extent to which a judgment rendered in the County's absence might prejudice the County or the existing parties; (2) the extent to which any prejudice could be lessened or avoided; (3) whether a judgment rendered in the County's absence would be adequate; and (4) whether Sundance would have an adequate remedy if the action were dismissed for nonjoinder.  Upon consideration, this Court concludes that dismissal is warranted.

As previously stated, a judgment rendered in the County's absence would not be adequate. Furthermore, Sundance has an adequate remedy, because it can file this case in state court and join the County as a party. Accordingly, the Court finds that the County is an indispensable party under Rule 19, and as such, this case must be dismissed. See, e.g., Acierno, 199 F.R.D. at 164.

**IV.  Conclusion**

Therefore, as explained above, it is ORDERED AND ADJUDGED that the Court dismisses this case without prejudice due to Sundance's failure to join Pasco County, an indispensable party that will destroy this Court's diversity jurisdiction over this case. As such, the Court terminates the pending summary judgment motions and directs the Clerk to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 1st day of September, 2009.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record